IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT BRODE,

        Plaintiff,

    v.                                 CIVIL NO. 1:20-CV-253
                                               (KLEEH)

MON HEALTH CARE, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

Pending before the Court is Defendant's motion for summary judgment [ECF No. 65]. For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.   BACKGROUND AND MOTION TO STRIKE

Plaintiff Scott Brode ("Brode") originally brought this employment action in the Circuit Court of Monongalia County, West Virginia, against Monongalia Health System, Inc. d/b/a Mon Health Medical Center. See ECF No. 4-1. He filed an Amended Complaint while the case was in state court, naming Mon Health Care, Inc. d/b/a Mon Health Medical Center ("Mon Health") as the defendant. See ECF No. 4-3. Mon Health removed the action to this Court on November 6, 2020. See ECF No. 1.

At Brode's request, this Court dismissed Counts Three[1] and

---

[1] In Count Three, Brode asserted a claim of Gender Discrimination/Stereotyping under the West Virginia Human Rights Act.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

Four[2] of the Amended Complaint.  See ECF No. 73.  The remaining claims are as follows:

- (Count One) Age Discrimination;

- (Count Two) Hostile Work Environment;

- (Count Five) Constructive Discharge; and

- (Count Six) Outrage.

Mon Health filed a motion for summary judgment on November 10, 2021.  See ECF No. 65.  Brode filed a motion for an extension of time to respond, stating that discovery had not been completed due to outstanding disputes.  See ECF No. 69.  The Court did not rule on the motion for an extension at that time, and Brode proceeded to file a response on December 1, 2021.  See ECF No. 79.

On February 21, 2022, Brode filed what he labeled as a "supplement" to his response.  See ECF No. 107.  Mon Health moved to strike the supplement, arguing that Brode did not seek leave to file a sur-reply.  See ECF No. 108.  Upon consideration, the Court **DENIES** the motion to strike [ECF No. 108].  The Court construes Brode's supplement as a sur-reply, and while Brode did not seek leave before filing it, the Court grants Brode such leave at this time.  During a status conference on May 20, 2022, the parties

---

[2] In Count Four, Brode asserted a claim of Sex Discrimination under Title VII of the Civil Rights Act of 1964.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

confirmed that all discovery issues had been resolved. As such, the motion for summary judgment is ripe for review.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

## III. <u>RELEVANT FACTS</u>

Mon Health first hired Brode in October 1979 as a data entry operator. Am. Compl., ECF No. 4-3, at ¶ 3. Brode voluntarily resigned from his position in 1981, and Mon Health hired him again as a data entry operator in May 1982. <u>Id.</u> ¶¶ 4-5. Brode held several positions over the years at Mon Health, earning numerous

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

promotions and taking on the role of IT Security Officer in 2003. Id. ¶¶ 10; Brode Dep. at 13:6-10, 13:19-14:7, 14:19-15:3, 15:8-16, 16:2-4, 19:16-21, 19:24-20:4.

As an IT Security Officer, Brode's duties included building new accounts for users, entering them in the system, and giving users access to the functionalities they needed. Brode Dep. at 24:5-18. Brode created system access for employees of any Mon Health entity. Id. at 27:8-11. His duties remained largely the same for 15 years in that position. Id. at 25:2-6. Between 1979 and 2017, Brode was never disciplined and never received unsatisfactory reviews or evaluations. Am. Compl., ECF No. 4-3, at ¶ 11.

By 2018, Mon Health's system had grown from one hospital to numerous facilities, and the IT Department was responsible for supporting all of them. Brode Dep. at 26:19-27:7. In January 2018, Mark Gilliam ("Gilliam") was hired by Mon Health as the Chief Information Officer ("CIO"). Gilliam Dep. at 15:17-16:20.

On August 31, 2018, Gilliam sent Brode a letter regarding the restructuring of Mon Health's IT department. Exh. 1 to Brode Dep., ECF No. 66-1. The letter informed Brode that his new position would be "IT Security Analyst" and that although his pay grade may have changed, his compensation would remain the same. Id. Brode's former position was eliminated. Brode Dep. at 36:24-37:6. The

reorganization affected the positions of all employees in the IT Department.  Id. at 33:11-20.  Brode was 59 years old at the time. See Response, ECF No. 79, at 15.

A new organizational chart dated September 30, 2018, contained two sections: "Administration" and "IT Services."  Exh. 4 to Response, ECF No. 79-4.  The "Administration" section began with Gilliam as CIO.  Id.  Two levels down were eight management positions, one of which was held by John Shaver ("Shaver") as Manager of IT Security.  Id.  Under Shaver was one employee: Brode. Id.

Shaver's position as Manager of IT Security was newly created and was a promotion for him; he had previously held one of two System Administrative positions.  Exh. 3 to Response, ECF No. 79-3.  Shaver was 45 years old at the time he was promoted.  Gilliam Dep. at 17:19-24.  Before Shaver moved into his new role, Brode, and not Shaver, had been reporting to Gilliam.  Exh. 3 to Response, ECF No. 79-3.  Brode never applied for the Manager of IT Security position.  Brode Dep. at 46:4-9.

Brode believes that in his new role as an IT Security Analyst, his job duties were significantly changed.  Id. at 38:14-23.  As an IT Security Analyst, he was expected to do tasks he did not understand and for which he was never trained.  Id.  Brode was expected to do more networking functions despite having no training

BRODE V. MON HEALTH                                          1:20-CV-253

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

in networking.   Id.   His additional responsibilities included
copying home directories from one server to another and being the
administrator of software that monitored PCs and printers for error
logs.   Id. at 39:18-24.   After Brode registered to be the
administrator of the software, he asked Shaver what to do with it,
and he was told to work with the networking team.   Id. at 40:14-
17.

Mon Health provided Brode with a copy of the job description
for his new position, which outlined his job duties and Mon
Health's expectations for his performance in that role.   Id. at
37:23-38:13; Exh. 3 to Brode Dep., ECF No. 66-2.   After the
reorganization, Brode and Shaver were in contact on a daily basis.
Shaver Dep. at 88:8-19.

Approximately three weeks after receiving the August 31,
2018, letter, Brode met with Gilliam to ask some questions
regarding his pay.   Brode Dep. at 34:11-24.   Gilliam asked Brode
if he was okay with his job description, and Brode responded that
with the proper training and education, he would be willing to
learn anything.   Id. at 35:1-10.

Soon after the reorganization, Mon Health management observed
that Brode's performance did not meet management's expectations.
Shaver Dep. at 101:24-102:9.   For instance, Shaver asked Brode to
export all high priority alerts from the Sophos application, and

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

Brode printed a massive number of documents instead of exporting them in electronic form.  Id. at 103:9–104:19.  The documents were unusable.  Id. at 104:1–3.  Brode was also unable to place an IP address on a work station, which Shaver believed that Brode should have been able to do.  Id. at 127:9–22.

In January and February 2019, Brode was assigned more networking jobs to perform, such as copying the home directories from one server to another.  Brode Dep. at 54:9–14.  Brode could not perform this task without dual monitors.  Id. at 54:15–17.  When Shaver asked about the status of the task, Brode inquired about his request for a second monitor but never received one.  Id. at 55:1–4.

In April 2019, Brode applied for his pension benefits from the "Defined Benefits Plan."[3]  Id. at 109:1–20.  Brode says that he told Shaver that he would be applying for the benefit.  Id. at 110:2–12.  Also in April 2019, Shaver met with Human Resources Business Partner Tiffany Smith ("Smith") to discuss how to address Brode's performance.  Smith Dep. 21:9–18.  Smith helped Shaver establish a plan to meet with Brode to discuss areas of improvement and help Brode understand his role.  Id.  Shaver and Brode met

---

[3] The pension plan had been frozen in 2007 but was still available to employees who already held it at that time.  Cooper Dep. at 18:12–19:23.  With the pension, employees could begin to draw benefits at age 60 and continue working full time, which was what Brode planned to do.  Id. at 21:10–23:7; Brode Dep. at 109:17–20.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

three times (in April, May, and June 2019) to discuss Brode's performance deficiencies and also engaged in less formal discussions about the same. Brode Dep. at 53:19–24, 69:8–17, 74:20–75:1; Shaver Dep. at 123:4–124:1. Shaver had not suggested any trainings to Brode or provided him with the opportunity to do any training. Shaver Dep. at 153:18–155:24.

During their meeting on April 23, 2019, Shaver told Brode about Mon Health's expectations related to his job duties and identified areas in which Brode needed to improve. Exh. 15 to Shaver Dep., ECF No. 66-6; Shaver Dep. at 124:16–125:3. Brode testified that Shaver said that Brode needed to either "get on the boat or get off." Brode Dep. at 48:18-20. Brode took this to mean that if he did not learn, his employment would be terminated. Id. at 48:20-22. Brode told Shaver that he needed education and training to perform his new role. Id. at 53:7-18. The next day, Shaver received a message that an elevated issue remained unaddressed. Exh. B to Motion, ECF No. 66-3 (MHBrode000509). It was an issue that Shaver had specifically asked Brode to address the previous day. Id.

Shaver kept notes on Brode throughout May and June 2019, documenting his work performance. Exh. 12 to Response, ECF No. 79-11. When Shaver met with Brode in May, Shaver told Brode that he did not see any improvement in his job performance and that he

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

really needed to step it up.  Brode Dep. at 48:22-24.  Brode again
brought up training and education, and Shaver told him that Mon
Health does not send anyone away for training anymore.  Id. at
70:3-18.  Brode's understanding was that network administrators
had previously received several certifications.  Id. at 70:10-24.

On May 31, 2019, after Shaver explained to Brode how to
resolve an incident in which all Mon Health users had access to
each other's files, Brode failed to resolve the situation.  Shaver
Dep. at 149:13-150:10.  On June 6, 2019, Brode failed to properly
handle a situation in which an employee was receiving thousands of
bounce-back messages on his email account.  Exh. B to Motion, ECF
No. 66-3 (MHBrode000511).

In June 2019, Shaver and Smith prepared a Performance
Improvement Plan ("PIP") documenting Shaver's discussions with
Brode and detailing the ways in which Mon Health expected Brode to
improve his performance.  Exh. 12 to Brode Dep., ECF No. 66-2;
Shaver Dep. at 136:8-10, 137:14-17; Smith Dep. at 21:23-22:22.
The PIP stated that any further violations would result in further
discipline action up to and including termination.  Exh. 12 to
Brode Dep, ECF No. 66-2.  Shaver never presented the PIP to Brode,
and Brode never saw the PIP during his employment at Mon Health.
Brode Dep. at 88:1-11; Shaver Dep. at 189:8-14.  Brode acknowledged
that he had been unable to perform tasks that were within the scope

BRODE V. MON HEALTH                                          1:20-CV-253

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

of his responsibilities as IT Security Analyst and that it was
reasonable for Mon Health to expect him to be able to do so.  Brode
Dep. at 55:20-56:3, 59:9-14, 61:14-62:8.

Shaver met with Brode in June and repeated what he had
previously said in the April and May meetings, which spurred Brode
to tell Shaver that without the proper training or education, he
would never be "up to par" and that maybe he should just resign.
Brode Dep. at 48:24-49:4.  No one at Mon Health told Brode that if
he did not resign, he would be terminated.  Id. at 51:6-16.  No
one at Mon Health suggested that Brode should retire.  Id.  Gilliam
testified as a corporate designee that if Brode had not improved,
his employment ultimately would have been terminated.  Gilliam
Dep. at 63:8-20.

On June 20, 2019, Brode told Shaver that in light of their
recent discussion, Brode had decided to resign, effective July 3,
2019.  Brode Dep. at 74:10-75:8; Shaver Dep. at 160:18-161:4.
Brode followed up with an email memorializing the same.  Exh. 8 to
Brode Dep., ECF No. 66-2 (MHBrode000496).  In the same email, Brode
said that "it would be great if [he] could find another department
to transfer to within the Health System" and named "Job #041972
Driver/Security Village at the Heritage Point" as a position that
interested him.  Id.  Mon Health already had a candidate in mind
for the Driver/Security position.  Exh. B to Motion, ECF No. 66-3

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

(MHBrode000515).  Around that time, Brode applied for a scheduler position with Mon Health.  Brode Dep. at 84:2-13.

A few days later, on June 25, 2019, Brode sent Shaver another email, thanking him for trying to assist him in transferring to another department but stating that he had "decided to end [his] career at Mon Health in the same department [he] started out in 40 years ago."  Exh. 10 to Brode Dep., ECF No. 66-2 (MHBrode000514). Brode said that his "last day of employment [would] be July 3, 2019."  Id.  At that point, Brode was no longer interested in either of the positions for which he applied or sought a transfer. Brode Dep. at 84:2-17.

The following day, on June 26, 2019, Brode proposed that Mon Health restructure his position.  Exh. 9 to Brode Dep., ECF No. 66-2 (MHBrode000513).  The proposal would have required Mon Health to hire another employee, and Mon Health did not do so.  Brode Dep. at 84:18-85:6.

Brode ultimately resigned from his position at Mon Health, effective July 2, 2019.  Id. at 87:5-7.  In the following months, Brode conveyed his happiness in a number of Facebook posts.[4]  In

_____

[4] On August 2, 2019, he wrote, "Today marks my first month anniversary of leaving Mon Health — I honestly can say, life has been grand!!!!!"  Exh. I to Motion, ECF No. 66-10 (Brode 000096).  In the same post, he said, "I crammed in a lot my first month of not working — ziplined over the Grand Canyon, rode in a biplane in Midland, VA, skydived in Mercer, PA, tubed behind a boat at Deep Creek Lake, MD, and mountain glided in Gatlinburg, TN!!!!"  Id.  On October 13, 2019, he wrote, "I have had the best summer/early fall in my entire life!!!"

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

November 2019, Brode obtained employment at NiSource, but he resigned one week later because it "just wasn't for [him]." Id. at 115:13-20. Brode started another job at West Virginia University on December 30, 2019, where he still works today. Id. at 115:17-20.

Brode only identified one comment by someone at Mon Health that was related to his gender or age, and he did not learn about it until after he had left Mon Health. Id. at 140:5-18. During his employment, Brode never alleged that he was being discriminated against on the basis of his age. Id. at 91:4-8; Smith Dep. at 161:18-162:2.

Brode has never received any kind of treatment or consultation for emotional distress related to his employment with or resignation from Mon Health. Exh. F to Motion, ECF No. 66-7, at Interrogatory No. 7. He has less confidence than he had before his resignation, and he was embarrassed about his poor job performance. Brode Dep. at 122:2-14, 125:6-12, 145:4-13. Despite that, Brode testified that he has been able to "live a happy life." Id. at 123:2-5.

Three employees currently report to Shaver. Two of them have the same job title that Brode had: IT Security Analyst. Shaver

---

Id. (Brode 000397). On March 11, 2020, Brode posted that he did not miss IT at all and said, "Life couldn't be better!!!!" Id. (Brode 000233).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

Dep. at 93:4-13.  One of them, Keith Click ("Click"), replaced Brode.  Id. at 93:15-20.  Mon Health is now "pushing" the employees to take training courses, including security plus training and network plus training in addition to any IT training.  Id. at 92:6-15.  One of Shaver's employees has received two certifications, and another was scheduled to take one within a month of Shaver's deposition.  Id. at 92:1-5.  Shaver sets up their trainings for them, or the employees can suggest courses to Shaver.  Id. at 100:2-8.  Shaver does not tell them that they need to get their own training to be able to do their jobs.  Id. at 100:9-12.  At the time of Brode's separation from Mon Health, Click was 34 years old, and the other employees were 32 and 49 years old.  Exh. C to Supplement, ECF No. 107-3.

## IV. DISCUSSION

Mon Health first argues that Brode's Title VII claim should be dismissed for failure to exhaust his administrative remedies. The Court denies this portion of the motion as moot because the Title VII claim (Count Four) has already been dismissed.  See ECF No. 73.  To the extent that Mon Health also argues that Count Three should be dismissed, the Court denies that portion of the motion as moot as well.

Although the Title VII claim has been dismissed, Title VII remains useful to the Court in analyzing Brode's claims.  The

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

Supreme Court of Appeals of West Virginia has "consistently looked to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964 . . . when interpreting provisions of our state's human rights statutes." W. Va. Human Rights Comm'n v. Wilson Estates, Inc., 503 S.E.2d 6, 12 (W. Va. 1998). West Virginia has a "longstanding practice of applying the same analytical framework used by the federal courts when deciding cases arising under the Human Rights Act[.]" Id.

### A.   Age Discrimination and Constructive Discharge (Counts One and Five)

In Count One, Brode asserts a claim of age discrimination under the West Virginia Human Rights Act ("WVHRA"). Mon Health argues that it is entitled to summary judgment because Brode did not suffer an adverse employment action and there is no evidence that his age played any role in Mon Health's decision-making.

The WVHRA makes it unlawful for an employer to discriminate against an employee "with respect to compensation, hire, tenure, terms, conditions or privileges of employment" based on the employee's age, which is defined as age 40 or above. Wilson v. Arcelormittal Weirton, LLC, No. 5:19-CV-254, 2021 WL 612405, at *2 (N.D.W. Va. Jan. 14, 2021) (citing W. Va. Code §§ 5-11-9, 5-11-3). Like their federal counterparts under Title VII, claims under the WVHRA follow the McDonnell Douglas burden-shifting framework.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

Id.

Under the burden-shifting framework, an employee must first prove a prima facie case of discrimination. Id. To do so, he must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that but for his protected class status, the adverse action would not have been taken. Id. (citing Syl. Pt. 2, Conaway v. E. Assoc. Coal Corp., 358 S.E.2d 423 (W. Va. 1986)). If the employee meets this initial burden, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Id. If the employer does so, the burden shifts back to the employee to prove that the employer's rationale is mere pretext for unlawful discrimination. Id.

Brode was 59 years old during the relevant time period, so there is no dispute that he is a member of a protected class and the first element of the prima facie case is satisfied. Overall, the Court finds that Brode has proved the first three elements. Mon Health has provided a legitimate, non-discriminatory justification for the adverse employment action. Brode has also satisfied the pretext element. Still, the Court finds that Mon Health is entitled to summary judgment on certain theories of liability.

BRODE V. MON HEALTH                                              1:20-CV-253

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

> 1. **While neither Brode's resignation/departure nor Mon
> Health's promotion of Shaver over Brode constitutes
> an adverse employment action, Brode may have
> experienced an adverse employment action when Mon
> Health moved him to a new role with significantly
> different responsibilities.**

An adverse employment action means a "significant change in
employment status, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a
decision causing a significant change in benefits." Id. at *3
(citation omitted).  Based upon the record before it, the Court
finds as a matter of law that Brode did not suffer an adverse
employment action related to his resignation/departure from Mon
Health or Mon Health's promotion of Shaver over him.  Brode has
produced sufficient evidence, however, for the jury to find that
he suffered an adverse employment action when Mon Health assigned
Brode a new role.

> a. **Brode's resignation from Mon Health did not
> constitute an adverse employment action
> because it was voluntary and Brode did not
> suffer from a constructive discharge.**

An employee who voluntarily resigned from his job has not
experienced an adverse employment action. Cooper v. Smithfield
Packing Co., Inc., 724 F. App'x 197, 202 (4th Cir. 2018).  However,
an employee can be "constructively discharged" if his "employer
has created a hostile working climate which was so intolerable
that the employee was forced to leave his . . . employment." Spano

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

v. Metro. Life Ins. Co., No. 2:09-cv-01243, 2011 WL 2180657, at *5 (S.D.W. Va. June 2, 2011) (citation omitted).  Thus, the employee must show that the "working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit."  Id.

The standard for constructive discharge is higher than the standard for hostile work environment.  See Tinsley v. Astrue, No. 3:10-cv-01184, 2012 WL 5377881, at *8 (S.D.W. Va. Aug. 15, 2012) (report and recommendation adopted) ("The law is well-settled that a claim of constructive discharge requires proof of working conditions that are even harsher than those required to state a claim of hostile work environment."); see also Strong v. Brennan, No. 1:16CV140, 2018 WL 3435352, at *7 (N.D.W. Va. July 17, 2018) ("[C]ourts have consistently held that the burden of proof required to establish a claim for constructive discharge is more stringent than that required to establish a pure hostile work environment claim.").

General unhappiness with performance management is insufficient to meet the standard for constructive discharge.  See Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) ("[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to

BRODE V. MON HEALTH                                        1:20-CV-253

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

resign."). In <u>Williams</u>, the employee alleged that her supervisors yelled at her, told her that she was a poor manager, gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back. <u>Id.</u> The court held that "these allegations, even if true, [did] not establish the objectively intolerable working conditions necessary to prove a constructive discharge." <u>Id.</u>

Here, Brode quit his job voluntarily. No one threatened Brode with discharge or told him that if he did not resign or retire, he would face termination. Brode has not produced any evidence of objectively intolerable working conditions. Below, the Court will discuss its finding that Mon Health is entitled to summary judgment on the hostile work environment claim. Because constructive discharge carries a more stringent burden of proof, the Court also finds that he has not suffered from constructive discharge.

Because there was no constructive discharge, Brode's resignation was voluntary, and there was no adverse employment action with respect to his resignation. Therefore, the Court **GRANTS** the motion for summary judgment to the extent that Brode asserts that he was constructively discharged (Count Five) and that his resignation/departure constituted an adverse employment action. Brode may not argue at trial that his resignation/departure from Mon Health was an act of age

18

BRODE V. MON HEALTH                                    1:20-CV-253

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

discrimination.

                      **b.**    **Mon Health's promotion of Shaver instead of
Brode cannot constitute an adverse employment
action because Brode never applied for the
promotion.**

Brode claims that he suffered an adverse employment action
when Shaver was promoted to a new position and Brode was not.  The
mere fact that a younger employee received a promotion, however,
cannot support an age discrimination claim; the plaintiff must at
least prove that he showed interest in the position.  See Harrison
v. S.C. Dep't of Mental Health, 641 F. App'x 202, 207 (4th Cir.
2015) ("It is undisputed that the plaintiffs did not apply or
attempt to apply for that position, and that is enough to defeat
their claims as a matter of law."); see also Evans v. Tech.
Applications & Serv. Co. 80 F.3d 954, 959 (4th Cir. 1996)
(explaining that to prove a prima facie case of discrimination in
the failure-to-promote context, the employee must show that "her
employer had an open position for which she applied or sought to
apply").

Brode never asserts that he applied for or expressed interest
in the promotion that Shaver received.  From 2003 through 2018,
Brode never applied for a promotion.  Brode Dep. at 46:4-9.  Brode
has not made the requisite showing, so Mon Health's "failure to
promote" him cannot constitute an adverse employment action.  Brode

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

may not argue at trial that Mon Health's failure to promote him was an act of age discrimination.

> **c.    A jury could find that Brode suffered an adverse employment action when Brode was switched to his new role as an IT Security Analyst.**

Brode also argues that he suffered an adverse employment action when Mon Health reassigned him to the IT Security Analyst position.  There is a genuine issue of material fact as to whether Brode was reassigned with "significantly different responsibilities," see Wilson, 2021 WL 612405, at *3, and suffered an adverse employment action in this sense when he became an IT Security Analyst.

Mon Health argues that many of Brode's job duties remained the same.  Brode, of course, disagrees.  Brode states that he was expected to do more networking functions despite having no training in networking.  His additional responsibilities included copying home directories from one server to another and being the administrator of software that monitored PCs and printers for error logs.  He asserts that he could not perform his new role without training and education.  Brode also acknowledged that he had been unable to perform tasks that were within the scope of his new responsibilities as IT Security Analyst.  Because a jury could find that his new job came with significantly different

BRODE V. MON HEALTH                                    1:20-CV-253

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

responsibilities, the adverse employment action element is satisfied.

> **2.  Brode has produced sufficient evidence for a jury to find that but for his age, Brode would not have been transferred to his new role as an IT Security Analyst.**

Mon Health argues that there is no evidence that Brode's age played any role in Mon Health's decision-making. "What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." Barefoot v. Sundale Nursing Home, 457 S.E.2d 152, 161 (W. Va. 1995). In a disparate treatment case, which is what Brode asserts here, "the complainant must show that the employer treats some people less favorably than others because they belong to a protected class. . . . Thus, a complainant asserting a disparate treatment theory must prove discriminatory intent to prevail[.]" Morris Mem'l Convalescent Nursing Home, Inc. v. W. Va. Human Rights Comm'n, 431 S.E.2d 353, 356 (W. Va. 1993).

The Court finds that Brode has produced evidence to create such an inference of discrimination. The record indicates that Brode requested additional training and education that he felt was necessary for him to perform his new role as an IT Security

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

Analyst.  Training opportunities were denied to him but provided to younger employees who filled his role after he left.  Further, criticism of Brode's performance began directly after Brode applied for his pension, and he testified that he had informed Shaver that he was applying for it.  For these reasons, there exists sufficient evidence to create an inference of discrimination, and the "but for" element is satisfied.

> **3.  Mon Health has produced a legitimate, non-discriminatory justification for Brode's transfer to a new role, and Brode has met his burden to show that the justification is pretext.**

Mon Health has stated that Brode's transfer to a new role was part of a department-wide reorganization.  This constitutes a legitimate, non-discriminatory reason for Brode's transfer.  Thus, the burden shifts back to Brode to show pretext.

A proffered reason is a pretext if it was not "the true reason for the decision[.]" Conaway, 358 S.E.2d at 430.  "The third step of the . . . proof scheme, pretext, is a . . . realization that some explanations are the product of hindsight rather than a true barometer of what occurred at the time of the decision." Taylor v. City Nat'l Bank, 642 F. Supp. 989, 995 (S.D.W. Va. 1986). "Pretext may be shown through direct or circumstantial evidence of falsity or discrimination; and, where pretext is shown, discrimination may be inferred." Mayflower Vehicle Sys., Inc. v.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

<u>Cheeks</u>, 629 S.E.2d 762, 773 (W. Va. 2006).  The Supreme Court of Appeals of West Virginia has written,

> In disparate treatment cases under the West Virginia Human Rights Act, W. Va. Code, 5-11-9 (1992), proof of pretext can by itself sustain a conclusion that the defendant engaged in unlawful discrimination. Therefore, if the plaintiff raised an inference of discrimination through his or her prima facie case and the fact-finder disbelieves the defendant's explanation for the adverse action taken against the plaintiff, the factfinder justifiably may conclude that the logical explanation for the action was the unlawful discrimination.

<u>Id.</u>

A plaintiff may succeed in showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Knotts v. Grafton City Hosp.</u>, 786 S.E.2d 188, 199 (W. Va. 2016).  "[T]he plaintiff need not show more than that the defendant's articulated reasons were implausible and, thus, pretextual." <u>Barefoot</u>, 457 S.E.2d at 164.  "[U]nless the employer comes forward with evidence of a dispositive, nondiscriminatory reason as to which there is no real dispute and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

after trial." Knotts, 786 S.E.2d at 199 n.13 (citing Barefoot, 457 S.E.2d at 164 n.19).

In this disparate treatment case, Brode has raised an inference of discrimination in his prima facie case, and Mon Health has produced a legitimate, non-discriminatory reason for Brode's transfer to a new role. A factfinder would be justified in disbelieving Mon Health's explanation for Brode's role change, given that Mon Health denied Brode's requests for necessary training and then provided it to younger employees who replaced him. In addition, Brode's work performance was never criticized until he applied to receive his pension benefits. This conflict reflects a question of fact to be resolved by a jury.

Brode has met his burden to show pretext. The motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as to Count One. Brode may not argue at trial that his resignation/departure was discrimination based on age. He may not argue that the promotion of Shaver over Brode was discrimination based on age. He may argue, however, that his transfer to the position of IT Security Analyst was discrimination based on his age.

## B. Hostile Work Environment (Count Two)

In Count Two, Brode asserts a claim of hostile work environment under the WVHRA. Mon Health argues that it is entitled to summary judgment on this claim because Brode has failed to

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

produce evidence of severe or pervasive conduct.

To establish a hostile work environment claim under the WVHRA, the plaintiff must show "(1) that the subject conduct was unwelcome; (2) it was based on plaintiffs protected class; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Wilson, 2021 WL 612405, at *4 (citing Hanlon v. Chambers, 464 S.E.2d 741, 756 (W. Va. 1995)). The "severe or pervasive" element sets a high bar, which is intended to be high in order to "filter out complaints attacking the ordinary tribulations of the workplace." Id. (citation omitted). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment[.]" Id. (citation omitted). The plaintiff must show not only that the subject perceived the conduct to be severe or pervasive, but also that a reasonable person in his position would similarly find the conduct severe or pervasive. See Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (citation omitted).

The Fourth Circuit has described how "severe or pervasive" should be assessed under Title VII:

> In determining whether the harassment alleged was sufficiently severe or pervasive, we must "look[] at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it [was] physically

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

> threatening or humiliating, or a mere
> offensive utterance; and whether it
> unreasonably interfere[d] with [the]
> employee's work performance." Harris, 510
> U.S. at 23, 114 S.Ct. 367.

Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 304 (4th

Cir. 2019) (citation omitted).

It is well-settled that Title VII is not a "general civility

code." EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328

(4th Cir. 2010) (citation omitted). "[W]hile no one condones

boorishness, there is a line between what can justifiably be

called . . . harassment and what is merely crude behavior." Id.

(citation omitted). "Activities like simple teasing, offhand

comments, and off-color jokes, while often regrettable, do not

cross the line into actionable misconduct." Id. (citation

omitted). "If they did, courts would be embroiled in never-ending

litigation and impossible attempts to eradicate the ineradicable,

and employers would be encouraged 'to adopt authoritarian traits'

to purge their workplaces of poor taste." Id. (citation omitted).

The Supreme Court of Appeals of West Virginia has noted that

"[a]s a general rule 'more than a few isolated incidents are

required'" to constitute pervasive harassment. Fairmont Specialty

Servs. v. W. Va. Human Rights Comm'n, 522 S.E.2d 180, 190 n.9 (W.

Va. 1999) (citations omitted); see also EEOC v. Sunbelt Rentals,

Inc., 521 F.3d 306, 318 (4th Cir. 2008) ("No employer can lightly

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

be held liable for single or scattered incidents."). The Fourth Circuit has found that a one-time slur does not meet the "severe or pervasive" test. See Lacy v. Amtrak, 205 F.3d 1333, at *4 (4th Cir. 2000) (unpublished).

Here, Brode has alleged in the Amended Complaint that individuals at Mon Health "made offensive comments, statements and/or suggestions about or directed to Plaintiff Brode, including but not limited to remarks about his gender and age. Further, Mon Health's sudden insistence to regularly evaluate Plaintiff made his work feel intolerable." These allegations are not supported in the record. Mon Health's performance management did not rise to the level of severe or pervasive. Simply put, Brode has not identified any comments or other actions that support a claim of hostile work environment. Mon Health's motion for summary judgment is **GRANTED** with respect to Count Two.

### C.   Outrage (Count Six)

In Count Six, Brode asserts a claim for the tort of outrage. Mon Health argues that it is entitled to summary judgment on this claim because it is preempted by Brode's WVHRA claims.

"It is a well-established principle that federal and state anti-discrimination laws, such as Title VII and the West Virginia Human Rights Act, preempt Harless-type, tort-based actions for discriminatory conduct in the workplace." Knox v. Wheeling-

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]

Pittsburgh Steel Corp., 899 F. Supp. 1529, 1535 (N.D.W. Va. 1995) (Stamp, J.) (dismissing claim of outrage because it was identical to the plaintiff's federal and state civil rights claims asserted in other counts).

In Brode's own words, the conduct he complains of as being outrageous was "[t]he age discrimination, gender discrimination, sex discrimination, hostile work environment and constructive discharge acts and/or omissions . . . ." Am. Compl., ECF No. 4-3, at ¶ 46. In other words, the outrage claim is identical to the other discrimination claims Brode brought pursuant to the WVHRA. The Court agrees with Mon Health that it is entitled to judgment as a matter of law on the outrage claim for this reason. Mon Health's motion for summary judgment is **GRANTED** with respect to Count Six.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Mon Health's motion for summary judgment [ECF No. 65]. The Court **ORDERS** as follows:

- The motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** with respect to Count One;

- The motion for summary judgment is **GRANTED** with respect to Count Two, and Count Two is **DISMISSED WITH PREJUDICE**;

BRODE V. MON HEALTH                                           1:20-CV-253

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 65]**

- The motion for summary judgment is **GRANTED**
  with respect to Count Five, and Count Five is
  **DISMISSED WITH PREJUDICE;**

- The motion for summary judgment is **GRANTED**
  with respect to Count Six, and Count Six is
  **DISMISSED WITH PREJUDICE;** and

- The parties are **ORDERED** to file, on or before
  **April 14, 2023,** a joint proposed schedule to
  govern the case moving forward or an
  advisement as to why a joint schedule could
  not be proposed.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum

Opinion and Order to counsel of record.

DATED: March 31, 2023

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA